DECREE.
The defendant resists the demand for a specific performance on the following grounds:
1. That he was not the last bidder.
2. That the entry of the sale was not regularly made by the commissioner.
3. That a puffer was employed at the sale, who forced the bidding much beyound the value of the land, which vitiated the sale.
4. That the complainant should be left to an action at law for damages.
On the state of facts as they appear by the answer and the evidence, the first question that arises, is i: Whether James Hogg the defendant is bound as the purchaser?” There could not have been any doubt on this point, if Mr. Hogg .had adherto his resolution of not becoming the purchaser after the bidding he made at 42 dollars per acre. It is *834 unnecessary to recapitulate, the evidence ; but upon considering all the facts of the case, it does appear t<v me that his acts amounted to a confirmation of the bidding of his son on his account. He was within a short distance, and ptobably heard his son bid. If he did not hear, he was immediately informed; for the commissioner, as well as several of the spectators spoke to him on the subject, as the purchaser; and instead of disavowing the act of his son, and disclaiming the purchase to the commissioner, or to the spectators, he made a calculation of the amount of the purchase in pencil, and stated he would comply with the terms of the sale; he even applied for an early possession of the property, and he then went away leaving the commissioner and the heirs of the estate, and others, under the impression that he was satisfied and would complete the purchase — many persons become bidders at sales, by the agency of others: and if they have not given authority, or if the agent exceeds his powers, they are bound to disclaim immediately. Instead of this, every thing done by Mr. Hogg, was a confirmation of the act of his son, and I think him bound by it, more especially as the other party acted upon his confirmation, and gave up and abandoned the plantation, which lias been lying waste ever since, much deteriorated.
The second objection of the defendant, is that he did not sign the entry of purchase in the commissioner’s sale book ; and that even the co; imissioner himself did not make the entry of the sale in his book for some hours after.
*835 The first part of this objection is unsanctioned by the practice of this country, at least in sales made by the authority of the courts. The officer is conJ J ' sidered as the agent of both parties, as well as ol the court: and the bidder is bound by the entry • which the officer makes. Mr. Sugden in his excellent treatise on the law of vendors, states on the. authority of Lord Chancellor Hardwicke, (I Ves. sen. 218. 22i.) that a sale before the master is not within the Statute of Frauds, and the sale will be enforced, even againt the. representatives of the purchaser, though he did not subscribe ; the judgment of the court taking it out of the statute. Sugden’s Law of Vendors, 36. 41.
The second part of this objection is, I think, equally unfounded. The commissioner testified that he immediately made an entry in pencil, of the sale, on the advertisement of the property, which he held in his hand ; and put down Mr. Hogg as the purchaser: and he made the entry in the sales book, in his office, in a few hours after the sale, and after Mr. Hogg had recognized the bidding made by his son, on his behalf. This is sufficient, in my opinion, and does av. ay .the objection. The reason for requiring entries to be made promptly is to prevent mistakes, and depending on mere recollections. The entries here were made in due time to guard against such mistakes.
The third objection of the defendant is, that the land and buildings were really not worth more than *836 twenty dollars per acre, and that a puffer was employed by the vendors, who went on bidding for them till the price was carried up to the sum of * # forty-four dollars, at which it was knocked off; that this puffing was illegal and vitiated the sale
The evidence in the case establishes, that the land including the buildings, was worth about eighteen or twenty or twenty-five dollars per acre, and not more, The evidence also establishes that a gentleman was requested by one of the family interested in the sales, to attend and bid on their account: and he testifies that he did bid occasionally, and on com munications with Dr. Porcher, which were open to view, until Mr. Hogg bid at forty-two dollars per acre; when he asked the commissioner in an under tone • of voice, whether he could venture to go higher, who answered in the affirmative, and he bid forty-three dollars per acre, on which young Mr. Hogg bid forty-four dollars, when the bidding was closed, and he gave the name of his father, the defendant, as the purchaser.
In the opinion of the bidder, who was himself examined, the land went above its value. But Dr. Porcher, who had married one of the heirs of the family of Pelot, was anxious to get the place as a valuable one, and as an excellent stand for his business, and resolved to get it, unless a very high price should be obtained. That after the sale, Dr. Por-cher was so desirous to-obtain the plantation that he requested this witness to propose to his mother-in- *837 law to join with him in taking the purchase off the hands of Mr. Hogg: which the witness declined doing? as he thought the price too high.
Other witnesses corroborated this statement as to the bidding; and added that there were other and real bidders up to about 18 or 20 dollars per acre ; and then the bidding went on between Mr. Hogg and the friend requested to bid for the family.
Upon this state of facts, the question arises whether this was such a puffing as is forbidden by law, and ought to vitiate the sale.
There can be no doubt but the bidding by the gentleman employed by the family, did raise the price above the intrinsic value of the estate, and be yond the amount, to which it would have gone, but for the interposition of this friendly bidder: this is putting the case most strongly against the vendor, and the defendant’s counsel has argued strongly on this vantage ground, but on the best consideration which I have been able to give his argument, I have not been, abie to agree with him: he insists that the simple fact of puffing by a mere friendly bidder vitiates the. sale, and that this is the settled law in England and here. I am not aware that this doctrine has been examined and decided here. In many years experience at the bar and on the bench, I do not recollect such a decision, and in England the doctrinéis by no means settled on the broad unqualified grcvm? supposed by the counsel, and as laid down by Cicero and Hu- *838 her. It is impossible not to be struck with the good sense of the observation of Lord Chancellor Lough-borough, in the case of Conolly and Parsons. 3 Ves. Jun’r 625. He said that he felt great difficulty to compass the reasoning, that a person does not follow his own judgment, because other persons bid 5 that the judgment of one person is deluded and influenced by the biddings of others; and he wished the doctrine of Lord Mansfield in Bexwell and Christie, (Cowp. 395.) should undergo a reconsideration. In Bramly vs. Alt. 3 Ves. Jun’r. 630. the Master of the Rolls supported the sale; there being real bidders, though there was one friendly bidder, who had run up the sale to £¡75 per acre ; the other bidder afterwards went higher ; that Judge concurred with Lord .Rosslyn, in considering the case of Howard and Castle only as a decision, that wrhere all the bidders except the purchaser are puffers, the sale shall be void. And where public notice is given, the sale will be binding on the purchaser, although there was no contest between real bidders; but only the purchaser and the person employed to bid, did bid against each other. 5 Ves. 508. Oldfield and Round.
Mr. Sugden.
after summing up the doctrine states, that he conceives if there were real bidders at a sale, it would be supported, although the bidding immediately preceding that of the puchaser was fictitious. Law of Vendors, 19.
I concur with him in the correctness of the opin *839 Ion, and there is no direct decision against it. It ° „ was argued by the counsel for the defendant, that the payment of a stamp duty to the government was the. occasion of the Court favouring and enforcing sales made under the authority of the Court, and binding bidders, though they had. not signed. But this is not correct; for it appears that sales by way of auction of estates, under the decree of the Court, are not liable to the duty. iSugden, 11.
Again, itwas contended thatit was not fair or equal, and therefore not equitable, that the bidder should be bound by such a sale as this, where it is clearly proved the price greatly exceeded the value; because if at sales made perfectly regularly under the authority of the Court, the estate is knocked off at a sum much below the value, the Court will open the biddings, and let in a new purchaser at a higher price. This certainly is the course of the court in England, but it never has prevailed here: not an instance within my knowledge, where the sales have been set aside, or the biddings opened, unless there was some fraud or misconduct. On the contrary, if the estate is knocked off to a. fair purchaser at a price greatly below its value, the vendor is bound by it, and the purchaser gets the benefit of his bargain.
Equality is equity — and as the purchaser, Mr. Hogg, woúld. have been the gainer if the estate had been knocked down to him at a small price., he must be content to take the purchase at a high price.
*840 With respect to the real knowledge of the parties in this case, it was proved, and indeed was well known to the Court, that Mr. Hogg was a good planter, a good judge of land, and lived near the land purchased, and knew it very well: it is incredible therefore that his judgment could have been misled by the bidding of a gentleman, well known to be less employed in agriculture than in other duties; not much resident in the neighbourhood, and not remarkable for his skill as a planter.
Besides it is distinctly stated that the friendly bidder communicated openly with Dr. Porcher, one.of the owners, so that this comes within the principle that where the friendly bidder is known to be employed, the sale is good, though I do not rely on this as material to the ease.
Nor indeed, if the doctrine contended for were so strictly maintained, would it be applicable here, for though the person so employed as an agent did not bid for himself, but for the benefit of the vendors, he was not a mere puffer, for this was a sale of an old family seat, made reluctantly but unavoidably, to make a division of the estate ; to which was attached by the family pretium affeetionis, which they had a right to indulge, and to say we will not part from our inheritance, held by three generations, without obtaining a great price. That this was the real state of the family feeling (connected indeed with other motives) is obvious from the proposal set on foot by one of the heirs, to take off the hands of *841 Mr. Hogg, the purchase of which he complains so much; and it required the dissuasion of a friend to induce a relinquishment of the place.
Upon the whole, I cannot feel it to be my duty to release a party from a contract, on this ground, under such circumstances.
The last point in the case made by the defendant is, that it is an executory contract, and this Court is not bound to enforce the specific execution of such a contract, but should leave the party complainants to their remedy at Jaw.
It is certainly in the discretion of the Court to enforce executory contracts, or not: but it is not an arbitrary discretion ; it is regulated by principle. It Would take me a wide range to examine this doctrine in extent; but I do not think it Would be a wise application of it; to send the parties to a new litigation at law, when the Court is satisfied with the justice of the claim. It is generally in cases where the party, seeking relief, is subject to some blame, that the Cmirt refuses to aid him, by decreeing a specific contract; and the Court must see that full relief may clearly be had by an action sounding in damages. I do not feel at liberty to refuse the relief prayed in this case.
It is therefore ordered and decreed, that the defendant, James Hogg, do complete his purchase .of the land sold by the commissioner in this ca^e, by *842 PaU'riS wh«le amount of purchase, (now long since due,) with interest, according to the terms of sale. And that he do accept such titles and conveyances as may be prepared and approved by the Court.

Mr. Martin for appellant.

And that he pay the costs of this suit.
Erom this decree the defendant appealed, and the cause was heard in the Court of Appeals, at Charleston, on the 1st April, 1822.
The contract which the decree has set up, is within the Statute of Frauds, and the defendant, ought to have had the benefit of his plea. Buckmaster vs. Harrop, 7 Ves. jun. 491. The grounds assumed by the decree, for overruling the plea of the statute are ; 1. That this is a judicial sale : 2. That, Mr. Buckner, acting as auctioneer, is the agent of both parties, and that his entry in the sales book is a sufficient memorandum of the contract, within the meaning of the statute.
As to the first ground, there is no authority for it, but a dictum of Lord Hardwicke, in The Attorney General vs. Day, 1 Ves. sen. 220. It is to be regretted that the Statute of Frauds has been in a great degree repealed by the construction of judges. It is a wise and politic law ; and it is admitted that the decisions against the natural meaning of the act ought not to be carried further than they have *843 •been. But the authority of Lord Hardwicke goes no further than this; that after the report of the master has been confirmed, the purchaser cannot ' 1 . avail himself of the plea of the statute. If Mr. Hogg had been served with a rule to shew cause why the report declaring him the purchaser, should not be confirmed, and had not shewn cause, but acquiesced, there would have .been great reason for holding him bound : and It is evident that Lord Hardwicke had in view, a case of this kind; but this case does not come within the rule : the commissioner, in his report, set out the facts ; the Court said the question could not be settled by motion, añ'd the bill was then filed. The practicó is explained ; 1 Harrison, Addenda, 1. And it is evident that the Court in such cases acts against the purchaser, solely on the ground, that he has submitted to the report. In this way the dictum in Attorney-General vs. Day is rendered consistent with the settled maxims of the law. After a party has been declared a purchaser, and the report is confirmed, it is equal to a decree. The purchaser having had notice, and not showing cause; the matter-passes in rero judi-catam, and rests no longer in contract. But it would not do to make a decree on a contract within the Statute of Frauds, and then say that the case is taken out of the statute by the decree. Nothing has been done since the sale to bind Mr. Hogg further than he was bound before. He is bound by the contract or not at all.
The next ground is, that Mr. Buckner was the *844 agent of both parties, and that his entry in the sales, book amounted to a contract in writing. But in fact he was the agent of the vendors only. If he had been the agent of Mr. Hogg, he would have been bound to act for his advantage. But he gave his assistance to the vendors in drawing Mr. Hogg on by pretended biddings, to give an unreasonable price. This shows that in his own understanding he was not Mr. Hogg’s agent: but if he was Mr. Hogg’s agent, then was he guilty of a breach of trust by doing an act which had a manifest tendency to injure and deceive his principal. He told Mr. Huger, lie might go one dollar further; and the remark was certainly made with a view to benefit the vendors, by taking advantage of the bidder’s anxiety. But it has been decided, that a contract obtained by a breach of trust in an agent, cannot be enforced in this Court. Cooth vs. Jackson, 6 Ves. 12. Mortlock vs. Butler, 10 Ves. 292.
But even if it he conceded, that the auctioneer is the agent of both parties, the rule which is contended for by the complainants, will not apply, because in this case there was no sufficient mema-yapdum. If the auctioneer can bind the purchaser by a memorandum, it ought to be made while the relation of principal and agent subsists: the relation cannot, be indefinitely extended; it must be confined to the period of the sale : but here there was nothing put in writing until several hours afterwards. Putting down in pencil, the name of the purchaser, on the báck of the advertisement, is clearly insuffi» cient.
*845 But supposing the plea of the statüte to be overruled, it is then a question of evidence; and we contend that upon the evidence, no contract is proved. It is positively proved, .that he. did not hid, nor authorise James E. Hogg to bid. The plaintiffs, sensible of this difficulty, endeavour to avoid it by saying that he assented: but there is no positive proof of assent; and his Honour indeed seems to rest his liability almost entirely on the ground that he was within hearing, and did not contradict his son, when he announced him as the purchaser. It appears to me, that the evidence does not warrant this conclusion, and that his Honour has laid too much stress upon it. It is at most presumptive ; and let me ask if the Court, on presumption, on the most doubtful species of evidence, will set up a contract, against the letter of the Statute Frauds? When the'decree relies on the evidence of subsequent assent, it impliedly admits that neither the memorandum of Buckner, nor the bidding James E, Hogg, can bind the defendant of themselves. If James E. Hogg was not his agent to bid, Buchner was not his agent to sign. There is then no proof of a contract, but the evidence of an agreement to assume the purchase which James E. Hogg had made; but is there any thing in this subsequent agreement to dispense with the requisitions of the Statute of Frauds ? They say he agreed to assume the purchase : we have a right to ask for the evidence of that agreement in writing.
But even if it be admitted that there was a con *846 tract, and that the requisitions of the statute are satisfied, yet the Court ought not to enforce it, because it has been obtained by a pretended competition, and by employing a person to bid for the vendors, without notice to the defendant. Upon this part of the case, it appears to me that his Hon-our has given into the opinion too readily, that Dr. Porcher was a real bidder. His declarations to Mr. Huger, at a subsequent period, have been relied on by his Honour. But I submit, that his subsequent declarations cannot be evidence in his favour : and to admit them is to put it in the power of any one, in such a case, to make evidence for himself. Nothing is more easy than for any one to affect an inclination to rescind a contract, release the purchaser, with a view to cover his real designs : especially as in this case, where the communication was made to a third person, and he ran no risk of being taken at his word.
The practice of employing persons underhand to bid on the part, of the vendors, or what is called puffing, has been often declared illegal. Bexwell vs. Christie, Cowp. 395. Howard vs. Castle, 6 T. R. 642. Conolly vs. Parsons, 3 Ves. jun. 628. Bramley vs. Alt, 3 Ves. 620. Independent of the objections arising from the means employed to obtain an unreasonable price, the extravagance of the price is of itself a strong ground to refuse relief. 2 ¿It. 134. The Court will not enforce a hard or unconscionable bargain, even where there is no imposition : much less will it interfere in favour of *847 one, who has practised on the anxiety and credulity of another, to obtain an extravagant compensation.

Mr. Pettigrue for Ccrr.plainants.

It is too late to deny that judicial sales are not within the statute : The reason of the exception is obvious; when a sale is made under a decree, every thing except the price and the name of the purchaser is fixed. There is no danger of fraud or perjury, because none of the parties can pretend to alter the terms which have been fixed by the Court. In a private treaty for the sale of land, a variety of questions are to be settled, and if parol evidence were let in, there would he danger, as well from misapprehension of the parties, as from the perjury of witnesses. In judicial sales every thing is defined, there can be no mistake ; a party cannot say, that he did not understand his bargain : and there is no reason for applying the provisions of the statute to a case which is not within the mischief of it. The sales of land, taken under execution by the sheriff, are an example : no doubt has yet been expressed of the validity of such sales : and I submit, that <here can be no good reason for making a difference between sales under a decree, and under a judgment.
But, supposing that judicial sales do not form an exception, the plea of the statute cannot be maintained, because the auctioneer is the agent of both parties, and the entry made by Mr. Buckner is a sufficient memorandum of the contract or agreement. It *848 *ias ^onS ^een observed, that the judgment of Lord Mansfield, in Simon vs. Motivos, 3 Bur. 1921. does in principle extend to sales of lands as well as goods. It is impossible to draw a distinction in this respect between the 4th and 17th clauses of the statute. The decisions in England after some fluctuation have now settled, that there is no difference between them. Keymis vs. Procter, 3 Ves. & Be. 57. The same point has been decided iñ a recent case, by chancellor Kent. McComb vs. Wright, 4 Johnson’s Ca. 659. As the case of Simon vs. Motivos, has never been overruled, and the doctrine now contended for is fairly deduced as a corollary, from the same premises, it is not to be supposed that this •Court will differ from the able judges, who have led. the way in the consideration of the same question. There are no precise terms in which a memorandum must be made. The entry of the purchaser’s name on the back of the advertisement is sufficient.-Sug. 72.
The next question íá upon the evidence. His own answer is relied on as evidence, to sliow that he did not contract; and the testimony of his son is brought, to corroborate the answer. We do not mean to say in opposition to his answer, that he gave his son authority to bid ; but we contend, that it is immaterial hether he authorised his son to bid for him or not; because he is bound by acquiescence, which is equal to subsequent assent. It appears from his answer, that he had notice of what Ms son did; and he admits that he applied to Por- *849 eker for possession: This shews that he knew, that his son had used his name, and the fact of notice is put beyond doubt by another part of his answer, in i . , t , , which he says, that when persons spoke to him the same day as the purchaser, he was debating in Ids own mind, whether he should agree to the purchase or not. He admits also that Po?'cher and M’-JYiell said to him, you have made a heavy purchase, which is express notice that his son had given his name. The evidence then is, that James E. Hogg purchased in his father’s name, without authority; •that the father had notice of it immediately, and by his own evidence did not disagree ; but by the evidence of four, disinterested witnesses actually agreed. If the testimony of the witnesses be received, he is then bound on the ground of contract. If a man purchase in the name of another without authority, and the other afterwards approve of it, he makes the former his agent ab initio. Powell o;n Mortga,-ges,.594, 1 Liv* 48. If the testimony of the witnesses be rejected, and we look merely to his answer, he is bound on the ground of fraud-
, 1. The auctioneer. says he would not have received the young man’s bid. If to obtain credit, the stín had represented himself as his father’s agent, when the father was not present, it would have been fraudulent in him, and he would have been bound, although his father would not. But all these circumstances are reversed. Here a1 person, who was present, allowed another to act as his agent, and by his .conduct permitted the other to get credit on ae- *850 count °f the agency. One or the other must be bound, or both. The same reason which binds the Pretended agent, in the one case, will bind the sup-posed principal in the case before us.
2. It is a settled rule in equity, that if a man makes a false representation to another going to deal in a matter of interest, he shall be liable- to the extent of his representation. Evans vs. Becknall, 6 Ves. 174. The principle will reach the case of one who allows another to pass himself for his agent to one who is going to deal with him on that representation.
3. It is a settled rule in equity, that he who is knowingly instrumental to another party’s conduct tending to deceive, shall be bound by the acts of the person, whom he enables to injure another. Berresford vs. Milward, cited Powell on Mort. 463. (4th Ed.) Hobbs vs. Norton, lb. 466. Head vs. Egerton, 3 p. Wms. 280. And in Richman vs. Morgan, cited Pow. on Mort. 468. Justice Butter says, u It is always considered as a constructive “ fraud, where the party knows the truth and con-u eeals it; and such constructive fraud always makes il the party liable.”
4. It has been often determined that a man standing by, and seeing his own land sold, the purchaser shall hold it against him. Sugden, 539. The same principle is laid down in Hunsden vs. Cheney, 2 Ver. 150., and Charles Clare’s case there cited. *851 On this principle of standing by, the cases are collected in 5 American haw Journal, 386. And in all of them the same rule has been applied qui tacet, con-sentive videtur. Hanning vs. Ferrers, (the case of the Mill,) 1 Eq. Cases, Ab. 356. If the owner of ground stands by, and permits another to build a house, he shall not afterwards recover the land from him. 1 Ves. sen. 396. This case is even stronger, and the defendant after standing by, and seeing his son contract in his name, will not afterwards be allowed to say he was not authorised.
The counsel cited 1 Swan. 329. to show that the hardship, of a bargain was not sufficient to prevent the Court from enforcing the contract. In proceeding to consider the objection of puffing, the argument was stopped by the Court.

Decree affirmed.